**Theodore MURPHY, # 259903,**
**Plaintiff,**

v.

**Marshall CARROLL, William McCann, J. Michael Stouffer, and Maryland Division of Correction, Defendants.**

**No. Civ.A. AMD01–1513.**

United States District Court,
D. Maryland.

May 10, 2002.

Theodore Murphy, Hagerstown, MD, pro se.

Stephanie Judith Lane Weber, Office of Atty. Gen., Baltimore, MD, J. Joseph Cur-ran, III, Adelberg Rudow Dorf and Hendler, LLC, Baltimore, MD, for defendants.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff, Theodore Murphy, is an Orthodox Jew and an inmate of the Maryland Division of Correction. He filed this action, pro se, pursuant to 42 U.S.C. § 1983, seeking injunctive relief and damages against several state corrections officials alleging that defendants violated his First Amendment right to the free exercise of religion by refusing to accommodate his request for an alternative "cell cleanup day" other than Saturday, which encompasses the Jewish Sabbath. The claim for injunctive relief is moot. Now pending is defendants' motion to dismiss or, in the alternative, for summary judgment as to Murphy's damages claims. Murphy has filed a memorandum in opposition to the motion. For the reasons set forth herein, I agree that defendants are entitled to qualified immunity and I shall grant the motion for summary judgment.

### I.

Plaintiff is confined at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland. MCTC inmates are required to keep their cells clean at all times. Under the relevant prison policy, inmates are provided cleaning utensils and solvents on Saturdays only. Murphy's Jewish faith prohibits him from working from sunset on Friday through sunset on Saturday. Accordingly, he was forced to clean his cell, including the floor, toilet and sink, with his bare hands on days of the week other than Saturday; non-Jewish inmates, in contrast, were provided scouring powder, mops, buckets, brushes and disinfectants on Saturdays, the declared "cell cleanup day." Murphy's finances are limited and he could not personally purchase

detergent and soap for use to clean his cell on days other than on the Sabbath.

In 1999, Murphy sought an accommodation from defendants Carroll and McCann, supervisory correctional officers, i.e., he requested that he be furnished the equipment and materials needed to clean his cell on a day other than the Sabbath. In keeping with settled prison policy, they denied his request. Murphy then filed an administrative complaint, which was dismissed by the warden, defendant Stouffer. Murphy then grieved his request to the state Inmate Grievance Office and, in April 2001, an Administrative Law Judge ("ALJ") ruled in favor of Murphy and ordered prison officials to accommodate Murphy by providing with cell-cleaning materials on a day other than Saturday. Although there was a slight delay by the prison officials in their implementation of the ALJ's order, Murphy has indeed been accommodated, and today he is regularly furnished with cell-cleaning tools and material on Sundays.

## II.

Defendants contend that Murphy has failed to state a claim and that, alternatively, they are entitled to qualified immunity. I disagree with the first contention but I agree with the second.

## A.

■ To determine the applicability of qualified immunity, this court follows a two-step analysis. First, it must determine whether the facts viewed in the light most favorable to Murphy establish the deprivation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). If so, the court then proceeds to determine whether, at the time of the alleged violation, the consti-

tutional right was "clearly established" and "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir.1996) (quoting *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir.1992)); *see also Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir.2000). "Clearly established," for purposes of qualified immunity analysis, means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson*, 526 U.S. at 614–15, 119 S.Ct. 1692; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Importantly, the right must be "clearly established" "at the appropriate level of specificity," which requires in turn that the court's analysis "proceed 'at a high level of particularity.' " *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir.2001) (quoting, *inter alia*, *Edwards v. City of Goldsboro*, 178 F.3d 231, 250–51 (4th Cir.1999)).

### 1.

■ To be sure, the alleged violation or infringement here is an indirect one; Murphy was not *forced* to clean his cell, over his objection, in violation of his observance of the Sabbath. However, the cell-cleaning supplies were not available to him, upon request, at other times. Under the circumstances, therefore, the designation of Murphy's Sabbath as the unalterable general cell cleanup day is encompassed within the ambit of his First Amendment right to practice his religion (by foregoing work). Accordingly, Murphy's challenge to the Saturday-only policy alleges sufficient facts to establish a deprivation of a constitutional right.

■ That this is so seems incontrovertible. Imprisonment deprives inmates of many rights. The Supreme Court has rec-

ognized, however, that inmates retain limited constitutional rights, including the First Amendment guarantee of the free exercise of religion. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *see Morrison v. Garraghty,* 239 F.3d 648, 656 (4th Cir.2001) ("The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices.... Its protections, including its directive that no law shall prohibit the free exercise of religion, extends to the prison environment....") (citations omitted). The free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are "reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. 2254 *O'Lone,* 482 U.S.at 348–49, 107 S.Ct. 2400; *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam); *cf. Levitan v. Ashcroft,* 281 F.3d 1313, 1317–23 (D.C.Cir.2002) (harmonizing *Turner* and *O'Lone* with *Employment Division, Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (holding that the free exercise clause did not exempt religious individuals from complying with valid, neutral laws of general applicability, even if those laws arguably impinged on their religious practices), in the context of a claim by inmates to a free exercise right to take wine with communion); *but see Hines v. S.C. Dep't of Corr.,* 148 F.3d 353, 357–59 (4th Cir.1998) (declining to resolve the issue of whether *Smith* alters the *Turner/O'Lone* balancing test for the permissibility of prison regulations infringing upon free exercise guarantee; prison grooming regulations upheld as "minimally rational").

Defendants contend that the policy requiring MCTC inmates to clean their cells on Saturday (if they are to employ materials provided for free by the prison) was based on sound management and penological concerns. They allege that the inmates' schedules are less hectic on Saturday than on weekdays, when inmates have many and various job and other commitments and when there is less of an opportunity to set a specific routine for all prisoners. Defendants argue further that to "maximize efficiency" given the large number of inmates (more than 3000), cells, and equipment, it is reasonable to restrict the time when inmates may clean their cells to one well-known period. Further, defendants assert that there are fewer correctional officers assigned to work on weekends and that, to ensure order and security, correctional officer assignments not directly related to security should be pared to the minimum time and effort so that the officers may be effectively managed for the good of the institution.

These contentions are understandable but they are not persuasive, i.e., they are not "minimally rational" in the face of Murphy's weighty free exercise claim. Simply put, no rational connection exists between the policy of Saturday-only cell-cleaning (with institutional material) and the prison's interest in efficiency, safety, and security. Maryland's policy does not satisfy the reasonableness standard set out in *Turner* and its progeny in light of the obvious, readily available alternatives open to prison authorities to accommodate Murphy's constitutionally protected religious practice, *i.e.,* providing him cleaning materials on Sundays, exactly as the ALJ ordered. Indisputably, "[p]risons are closely regulated environments in which uniformity of schedule, appearance, and diet are, for reasons of security and economy, high priorities. Yet the First Amendment guarantees—even to inmates—minimal government interference with the free ex-

ercise of religion." *Developments in the Law: The Law of Prisons,* 115 HARV. L.REV. 1838, 1891–92 (2002).

2.

█ Despite the patent unreasonableness of the defendants' refusal to accommodate Murphy's request to provide him with cleaning equipment on a day other than his Sabbath, which imposed an unconstitutional burden on his First Amendment rights, I find that the defendants' actions did not violate "clearly established" law. In the context of the prison setting, as of the time Murphy made his requests for an accommodation in September 1999, First Amendment doctrine was not fully evolved (and is not today). Undeniably, there is ample case law involving religious diets, grooming, garments, worship (including Sabbath observances), and incoming mail, and other incidents of prison life. *See generally,* Stephen S. Sypherd and Gary M. Ronan, *Substantive Rights Retained by Prisoners,* 89 GEO.L.J. 1898 (2001). Nevertheless, recalling that the analysis must "proceed at a high level of particularity," *Knussman,* 272 F.3d at 639, there was at a the relevant time virtually no guidance regarding the observance of the Jewish Sabbath in the context of prison work, programming and assignments. *Cf. Love v. Reed,* 216 F.3d 682, 686 (8th Cir.2000) (free exercise rights of self-proclaimed adherent of "Hebrew religion" who derived beliefs from fundamentalist interpretation of Old Testament violated because prison officials refused to provide food on Saturday for consumption on Sunday).

It has never been held by the Supreme Court, the Fourth Circuit or the Maryland Court of Appeals that a Jewish prisoner has a constitutionally protected First Amendment right to be afforded institutionally-issued cleaning materials to allow him to clean his cell on a day other than the Jewish Sabbath. The right was not sufficiently clear that a reasonable prison official would understand that a policy such as that implemented by Maryland violated that right. Indeed, Warden Stouffer attests here that in his more than 20 years of experience in corrections, and despite the longtime presence in Maryland prisons of Jewish inmates, he has never encountered an inmate who declined to clean his cell on the Sabbath. Consequently, I find that the defendants are entitled to qualified immunity. *See Wilson,* 526 U.S. at 616–18, 119 S.Ct. 1692; *Flagner v. Wilkinson,* 241 F.3d 475, 483 (6th Cir.) (granting qualified immunity to prison officials who compelled inmate who was an Hasidic Jew to conform to prison grooming policy), *cert. denied,* —— U.S. ——, 122 S.Ct. 678, 151 L.Ed.2d 590 (2001).

B.

For the aforementioned reasons, an order shall be entered granting the defendants' motion for summary judgment on qualified immunity grounds and entering judgment in favor of the defendants and against the plaintiff.

ORDER

In accordance with the foregoing Memorandum, it is this 10th day of May, 2002, hereby ORDERED that

(1) Defendants' motion to dismiss (Paper No. 12–1) or, in the alternative, motion for summary judgment (Paper No. 12–2), treated as one for summary judgment, IS GRANTED;

(2) Judgment is ENTERED in favor of the defendants and against the plaintiff;

(3) The Clerk of the Court shall CLOSE this case and MAIL a copy of this Order

together with the foregoing Memorandum, to all counsel and to plaintiff pro se.