# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4048

_____

Levester Gillard,     *
    *
       Appellant,     *
    *
    *    Appeal from the United States
      v.     *    District Court for the
    *    Western District of Arkansas.
Amy Kuykendall, Jail Administrator,     *
Howard County Jail; Butch Morris,     *    [UNPUBLISHED]
Sheriff, Howard County, Arkansas,     *
    *
       Appellees.     *

_____

Submitted: September 4, 2008
Filed: October 2, 2008

_____

Before MURPHY, BYE, and BENTON, Circuit Judges.

_____

PER CURIAM.

Arkansas inmate Levester Gillard appeals after the district court disposed of his 42 U.S.C. § 1983 lawsuit in a summary judgment order and a subsequent order following a bench trial. Claiming First and Eighth Amendment violations, Gillard sought damages against Howard County Sheriff Butch Morris and Howard County Jail (HCJ) Administrator Amy Kuykendall.[1] We affirm in part and reverse in part.

_____

[1] Gillard has waived his other claims on appeal by not addressing them. See K.D. v. County of Crow Wing, 434 F.3d 1051, 1055 n.4 (8th Cir. 2006).

Initially, we disagree with Gillard that the district court abused its discretion by denying his motions to compel discovery as moot or as premature, see Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1052 (8th Cir. 2007) (standard of review is for gross abuse of discretion), or that the court prematurely granted summary judgment, see Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir. 1999) (party opposing summary judgment who believes he has not had adequate time for discovery must seek relief under Federal Rule of Civil Procedure 56(f), which requires filing of affidavit showing what specific facts further discovery might unveil). Gillard also complains that he should have been granted leave to amend his complaint to assert individual-capacity claims, but we need not entertain this argument because the district court in fact considered individual-capacity claims.

Turning to the merits, we conclude that the district court properly granted summary judgment for defendants on Gillard's Eighth Amendment claim arising from delays in administering his medication. See Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006) (standard of review). First, there was no evidence that Sheriff Morris knew of Gillard's medical problems or of problems with the administration of his medication. See Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir.) (to establish personal liability of supervisory defendant, plaintiff must show personal involvement in, or direct responsibility for, deprivation of constitutional rights), cert. denied, 128 S. Ct. 155 (2007). Second, while Kuykendall responded to Gillard's grievances about the administration of his medications, the record shows merely that on four occasions over a two-month period, various jailers (not defendants here) were late in giving Gillard his medications and did not always administer them with meals as Gillard apparently desired. See Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006) (to prevail on Eighth Amendment individual-capacity claims, inmate must show that defendant prison officials deliberately disregarded objectively serious and known medical need); see also Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir. 2007) (deliberate-indifference standard applies to pretrial detainees' Eighth Amendment

medical-care claims), cert. denied, 128 S. Ct. 1745 (2008).[2]  Significantly, Gillard offered no evidence showing any adverse consequences from the delays in the receipt of his medications.  See Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (objective seriousness of delay in treatment must be measured by reference to effect of delay, which must be shown by verifying medical evidence).

The First Amendment claims[3] were resolved by the district court following a bench trial, and we review the court's related factual findings for clear error and its legal conclusions de novo.  See Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997).  We conclude that Gillard's claim regarding the decision to prohibit him on one occasion from attending a weekly worship service was properly dismissed:  he testified that his pastor was allowed to visit him that week, and that in all subsequent weeks while at HCJ, his pastor was allowed to visit for an hour of worship.  See Brown v. Polk County, Iowa, 61 F.3d 650, 660 (8th Cir. 1995) (religious adherent must show that challenged governmental action substantially burdened religious practice, i.e., prevented him from engaging in conduct his religion requires).  We further conclude, however, that remand is warranted on the First Amendment claim arising from the decision to punish Gillard for not cleaning his cell on Saturdays despite his protestations that doing so contravened his religious beliefs.  The testimony on this claim was as follows.

From March 1999 until Gillard was incarcerated on June 18, 2004, he had been a member and regular attendee at a nondenominational church known as the New Testament House of Prayer (NTHP).  Based on interpretation of certain Biblical passages, NTHP members believe that the Sabbath is on Saturday, and that from 6 p.m. on Friday until 6 p.m. on Saturday no work is to be done, and believers must

---

[2]During part of Gillard's incarceration at HCJ, he was a pretrial detainee.

[3]We decline to consider Gillard's newly asserted claim of religious discrimination.  See Stone v. Harry, 364 F.3d 912, 914-15 (8th Cir. 2004).

engage in complete rest. The only exception is when a member must work to feed his family, would lose his job if he refused to work when scheduled, and has no choice in his schedule. Gillard's pastor testified that making a bed did not constitute work, but that all other household chores should be done before the Sabbath begins. Gillard testified that since joining NTHP he had worked on the Sabbath only when he was scheduled to work where he was employed; other witnesses confirmed this testimony.

HCJ has a policy requiring inmates to clean their cells before breakfast. Inmates must sweep, mop, and empty trash. If an inmate refuses to do so, telephone and television access are withheld until the next day--if the inmate agrees to clean his cell that day. The policy was instituted for health and safety reasons, because lack of cleanliness and accumulated trash attract insects. Kuykendall testified that, while Gillard was at HCJ, there was an ant problem in his cell because he had collected juice boxes under his bed, and an exterminator was required to spray; Gillard did not recall the ant problem. There were no exceptions made to the cell-cleaning policy, such as allowing an inmate to clean at an alternate time, because other inmates would view exceptions as special treatment and this would cause "mass confusion."

On June 26, Gillard's first Saturday at HCJ, he refused to clean his cell, and his television and phone privileges were rescinded. Defendants denied knowing that any other privileges were denied, but Gillard insisted that at times when he refused to clean, he was also denied yard call and library time until the next morning when he performed the requisite cleaning, which he testified included scrubbing the shower and toilet and cleaning windows. In a June 26 grievance, Gillard complained that he interpreted the Bible as requiring him to rest on the seventh day and thus he could not be punished for refusing to clean his cell on Saturday. Kuykendall responded that, because Gillard refused to clean, his phone was turned off just as it would be for any inmate who so refused. On July 3, the next Saturday, Gillard's privileges were again taken away until the next day when he refused to clean his cell. Gillard testified that at one point he complained directly to Sheriff Morris, who responded that there would

-4-

be no exceptions to the cell-cleaning requirement. Gillard estimated he was punished over twenty times at HCJ for refusing to clean.

We conclude the district court erred in determining that requiring Gillard to mop and sweep his cell on Saturdays did not substantially burden his sincerely held religious belief. Defendants did not challenge the sincerity of Gillard's religious belief, and while they presented testimony that the cleaning took only five to ten minutes, the evidence also showed that performing any work whatsoever on a Saturday before 6 p.m. (other than making a bed, according to Gillard's pastor) violated Gillard's religious belief unless a job that he was holding to support his family required him to work on Saturday.[4] Cf. Love v. Reed, 216 F.3d 682, 685-86 & nn.5-6 (8th Cir. 2000) (upholding conclusion that inmate's sincerely held religious belief--that from sundown on Saturday to sundown on Sunday he was prohibited from benefitting from work of others, such as meal preparation--was substantially burdened by prison's refusal to provide peanut butter and bread in his cell on Saturday, so he could prepare sandwiches for Sunday).

We also disagree with the district court's application of the factors announced in Turner v. Safley, 482 U.S. 78 (1987), for determining whether a prison policy that restricts an inmate's constitutional rights is nonetheless valid because it is related to legitimate penological interests. See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 982-83 (8th Cir. 2004) (Turner factors are whether (1) there is valid, rational connection between policy and government interest justifying it, (2) there are alternative means available for inmate to exercise right, (3) to accommodate inmate would have significant ripple effect on guards, other inmates, and prison resources, and (4) there is alternative that fully accommodates inmate at de minimis cost to valid

---

[4]This might be analogized to requiring a Muslim inmate to eat only a small amount of pork. Cf. Hayes v. Long, 72 F.3d 70, 74 (8th Cir. 1995) (it is clearly established that Muslim inmates have right to avoid all contact with pork or any pork-contaminated food).

penological interests). The <u>Love</u> court rejected the prison defendants' assertions that there was a rational, valid connection between the policy prohibiting inmate Love from keeping kitchen food in his cell on the Sabbath and the purportedly legitimate penological interests similar to the ones raised here. <u>See</u> <u>Love</u>, 216 F.3d at 690-91 (accommodating Love posed no more threat to sanitation than already common practices, such as allowing kitchen food in cells on religious holidays, and dietary accommodations given to Islamic prisoners during Ramadan could also lead to other prisoners requesting such accommodations). Kuykendall testified that at one point the ant problem arose due to a collection of juice boxes under Gillard's bed, but we fail to see how allowing Gillard to empty his trash and clean his cell after 6 p.m. instead of around 6 a.m.--once a week, on Saturdays--would compromise HCJ's sanitation.

Further, we conclude that Gillard had no other consistent or dependable way of exercising his right to observe the Sabbath: he was forced to choose between violating his religious beliefs or suffering punishment. <u>Cf. id.</u> at 689-90 (Love had no consistent and dependable way of exercising right to observe Sabbath without requested accommodation, because he could not always afford to buy pre-packaged food from commissary, and choice between fasting or compromising religious beliefs was really no choice at all). Finally, there was no evidence presented at trial as to the burden that accommodating Gillard would place on jail staff, and thus no basis for concluding that permitting Gillard to clean his cell before 6 p.m. on Friday night, or soon after 6 p.m. on Saturday--which would fully accommodate his right to observe the Sabbath--would result in more than a de minimis cost to valid penological interests. <u>Cf. id.</u> at 691 (providing food to Love on Saturdays fully accommodated his rights at de minimis cost to valid penological interests); <u>Murphy v. Carroll</u>, 202 F. Supp. 2d 421, 422-25 (D. Md. 2002) (finding no rational connection between policy requiring inmates to clean cells on Saturdays and prison's interest in efficiency, safety,

and security, as there were obvious and readily available alternatives, such as providing Orthodox Jewish inmate cleaning materials on Sundays).[5]

Accordingly, we reverse and remand the First Amendment claim arising from application of the cell-cleaning policy to Gillard on his Sabbath for entry of judgment in favor of Gillard with an award of appropriate relief. In all other respects, we affirm.

_____

[5]The Murphy court found defendants entitled to qualified immunity, but defendants in this case did not seek summary judgment on that basis or raise that as an issue at the evidentiary hearing.