# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-2388/3388

_____

| | | |
|---|---|---|
| Willie Robinson, | * | |
| | * | |
| Appellee/Cross-appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| Deborah Hager; Rick Bailey, Sgt.; | * | Eastern District of Missouri |
| Harold Martin, CO, | * | |
| | * | |
| Appellants/Cross-appellees. | * | |

_____

Submitted: March 14, 2002

Filed: June 3, 2002

_____

Before McMILLIAN, HEANEY and RILEY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Deborah Hager, Rick Bailey, and Harold Martin (together, "defendants") appeal from a final order entered in the United States District Court for the Eastern District of Missouri upon a jury verdict in favor of Willie Robinson ("plaintiff"), finding that defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment. For reversal, defendants argue that the district court erred in denying their motion for judgment as a matter of law on plaintiff's Eighth Amendment claim because (1) plaintiff presented no evidence of

causation and (2) plaintiff presented no evidence that defendants actually ignored or disregarded any request for help. For the reasons expressed below, we reverse.

Jurisdiction was proper in the district court pursuant to 28 U.S.C. § 1331. Defendant filed a timely notice of appeal, pursuant to Fed. R. App. P. 4(a)(1)(A). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## I. Background

In May of 1995, plaintiff, a sixty-four-year-old man with a history of hypertension, was convicted in Jackson County Circuit Court of drug-related crimes and sentenced to a seven-year term of imprisonment. Plaintiff's sentence later was suspended, and plaintiff was required instead to enter a 120-day drug treatment program. Plaintiff was first sent to the Farmington Treatment Center, where Dr. Santiago Hallazgo assigned him to the chronic care clinic and prescribed enough hypertension medication to last thirty days. On June 9, 1995, plaintiff was transferred to the Mineral Area Treatment Center (MATC), where defendants were employed. Deborah Hager, as the Substance Abuse Supervisor, oversaw all operations at MATC, Sergeant Rick Bailey oversaw the custody staff, and Harold Martin was a custody officer. On arrival at MATC, plaintiff's hypertension medication was taken away from him, as per standard procedure.

Because MATC does not have its own medical department and has no doctors or nurses on its staff, inmates at MATC obtain all medical care from nearby Potosi Correctional Center (PCC), a maximum security penitentiary. An MATC inmate cannot directly contact the PCC medical facility or obtain care on a walk-in basis. Rather, when an MATC inmate needs medical care, he is required to fill out a Medical Services Request form ("MSR") and await notification of an appointment. An MATC inmate also may arrange for medical attention by asking MATC corrections staff to contact the PCC medical department on his behalf.

-2-

On June 19, 1995, plaintiff submitted an MSR for blood pressure medication to replace the supply that had been confiscated from him when he arrived at MATC. On June 21, 1995, Dr. Pedro Cayabyab from PCC prescribed enough medication to plaintiff to last thirty days. Plaintiff submitted another MSR to refill his prescription when the June 21 prescription began to run out. This time, plaintiff was not contacted about an appointment and did not receive a refill of his medication. Plaintiff filed additional MSRs, but still did not receive a response. According to plaintiff, he repeatedly complained to each of the defendants about the lack of response to his MSRs and his need for the medication. Plaintiff said that he complained to Bailey on three or four occasions, to Martin at least once, and to Hager at least twice. According to plaintiff, each of the defendants told plaintiff that they would contact the PCC medical staff on his behalf.[1] Plaintiff was never contacted by PCC medical staff and never received the medication. Plaintiff also said that he repeatedly requested to be excused from the strenuous physical exercise required as part of the treatment program, but that these requests were rebuffed.

On August 20, 1995, nearly thirty days after plaintiff's June 21 prescription ran out, an MATC inmate reported to Martin that plaintiff had lost control of the right side of his body. At this point, Martin arranged for plaintiff to go to the PCC medical facility for observation and treatment. Plaintiff subsequently was transferred to a local hospital for treatment. Plaintiff's medical records indicate that he had suffered a stroke.

Plaintiff sued defendants (as well as other corrections officers and members of the PCC medical staff) pursuant to 42 U.S.C. § 1983 asserting, *inter alia*, that defendants were deliberately indifferent to his serious medical needs. On August 24,

---

[1]Each of the defendants testified that they had no specific recollection whether they had these conversations with plaintiffs, and neither confirmed nor denied that they took place.

2000, the district court denied summary judgment as to defendants. The case proceeded to trial on March 5, 2001. On March 7, 2001, the district court denied defendants' motions for judgment as a matter of law made at the close of plaintiff's case and at the close of all evidence.

On March 8, 2001, the jury returned a verdict in favor of plaintiff, finding that defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment, and awarding him $5,000 in compensatory damages ($3,000 against Hager and $1,000 each against Martin and Bailey).[2] Defendants filed a post-trial motion for a new trial or judgment as a matter of law on March 22, 2001, which was denied on April 26, 2001. This appeal followed.

## II. Discussion

This court reviews *de novo* a district court's denial of a motion for judgment as a matter of law. See Van Steenburgh v. Rival Co., 171 F.3d 1155, 1158 (8th Cir. 1999) (Van Steenburgh). We view the facts in the light most favorable to the verdict, assuming that the jury resolved all evidentiary conflicts in favor of the prevailing

---

[2]Following trial, plaintiff moved for $27,240 in attorney's fees pursuant to 42 U.S.C. § 1988 and challenged the cap on attorney's fees placed by the Prisoner Litigation Reform Act (PLRA). The district court ruled that the PLRA was constitutional, ordered defendants to pay plaintiff's attorneys $6,500 in fees, and ordered an additional $1,000 in fees to be paid by plaintiff out of the proceeds of the judgment. Plaintiff cross-appeals this ruling on the ground that the PLRA is unconstitutional. Because this circuit has already upheld the constitutionality of the PLRA, and because a panel cannot overturn another panel's decision, no further consideration of this issue is warranted. See Foulk v. Charrier, 262 F.3d 687, 704 (8th Cir. 2001) ("[W]e agree with the majority of circuits which have confronted the equal protection issue and have held that the PLRA's attorney's fees cap passes constitutional muster.").

party. See id. The verdict should be overturned only where no reasonable juror could have found in favor of the prevailing party. See id.

The Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates. See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (Farmer). The government is obligated "to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (Estelle). For this reason, the Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners. See id. at 104 (citations omitted). Deliberate indifference to the serious medical needs of inmates may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05. In order to find a prison official liable for a deliberate indifference claim, the inmate must prove that (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. See Farmer, 511 U.S. at 837.

We may assume without elaboration that a stroke is a serious medical harm, the risk of which was substantial in plaintiff's case. Viewing the evidence in the light most favorable to the verdict as required by Van Steenburgh, 171 F.3d at 1158, a reasonable juror could infer that defendants knew of plaintiff's hypertension and that they ignored plaintiff's requests concerning his hypertension. However, a reasonable juror cannot infer from the evidence whether plaintiff's hypertension caused his stroke or, consequently, whether plaintiff's lapse in hypertension medication had anything to do with his stroke.[3] Plaintiff did not offer any evidence that his lapse in

_____

[3]Because we hold that there is insufficient evidence that plaintiff's lapse in hypertension medication caused his stroke, we do not reach the question of whether

treatment, and not some other factor, caused him to suffer his stroke.  See Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (explaining that plaintiff must place verifying medical evidence into record to establish effect lapse in treatment had on medical condition).

When an injury is sophisticated, proof of causation generally must be established by expert testimony.  See Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1210 (8th Cir. 2000) ("'[A] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs. However, when the injury is a 'sophisticated' one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony.'") (citations omitted).  The instant case is not one in which the sudden onset of an injury has occurred, because plaintiff had been off medication for nearly a month before he had the stroke.  Nor is this case one in which the injury is visible – although a person suffering from a stroke may exhibit visible symptoms, the stroke itself is a sophisticated injury which could be caused by numerous factors other than lack of medication.  Therefore, expert medical testimony is needed to prove causation.  See id.; accord Glastetter v. Novartis Pharms. Corp., 252 F.3d 986, 989-90 (8th Cir. 2001) (excluding expert testimony in product liability action because evidence showed only "temporal association" between product and stroke and did not constitute "scientifically valid" evidence establishing "to a degree of medical certainty" that product caused stroke).  Plaintiff's failure to produce expert testimony to prove that the lapse in medication caused his stroke is therefore fatal to his deliberate indifference claim as a matter of law.

---

defendants knowingly disregarded plaintiff's risk of stroke by ignoring his repeated requests for the medication.

Because plaintiff failed to offer any expert evidence showing that defendants' actions caused him to suffer his stroke, we hold that plaintiff did not establish a *prima facie* violation of the Eighth Amendment and that no reasonable juror could have found in favor of plaintiff. Hence, we hold that the district court erred in denying defendants' motion for judgment as a matter of law on plaintiff's Eighth Amendment claim.

### III. Conclusion

For the reasons expressed above, we reverse the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.