David Robert **KUNZE**, Plaintiff,

v.

Monty **RAUSER**, Governor's Services; Elaine Little, Director of Corrections; Timothy Schuetzle, Warden N.D.S.P.; Robert "Bob" Coad, Deputy of Programs; Pat Branson, Deputy of Operations; Kathy Bachmeier, RN Prison Medical Dir.; Dr. Kent Diehl, Penitentiary Doctor; Dr. Gerd D. Ebel, Penitentiary Doctor; Dr. Marcus M. Fiechtner, Plaintiff's Dr.; Karen E Boelter, L.P.N. at Penitentiary; Gail Schafer, R.N. at Penitentiary; Greg Pfennig, R.N. at Penitentiary; and John J. Hagan, M.D./P.C. at Penitentiary, Defendants.

No. A1–04–005.

United States District Court,
D. North Dakota,
Southwestern Division.

Sept. 8, 2004.

David Robert Kunze, Bismarck, ND, for Plaintiff.

Jean R. Mullen, Attorney General's Office, Brenda Lynn Blazer, Vogel Law Firm, Bismarck, ND, William J. Delmore, Kelsch, Kelsch, Ruff & Kranda, PLLC, Mandan, ND, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

On July 12, 2004, Defendants Monty Rauser, Elaine Little, Timothy Schuetzle, Robert Coad, Pat Branson, Kathy Bachmeier, Karen Boelter, Gail Schafer, and Greg Pfennig filed a Motion for Summary Judgment. On July 26, 2004, Defendant Dr. John Hagan a filed a Motion for Summary Judgment. For the reasons set forth below, both motions are granted.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

The plaintiff, Robert David Kunze, is an inmate at the North Dakota State Penitentiary in Bismarck, North Dakota. On September 24, 2003, Kunze filed a pro se complaint asserting the Defendants had violated his civil rights pursuant to 42 U.S.C. § 1983. Magistrate Judge Dwight C.H. Kautzmann reviewed Kunze's complaint as mandated by the Prisoner Litigation Reform Act, 28 U.S.C. § 1915A(a), and concluded Kunze had alleged two cognizable claims: (1) failure to provide proper medical care; and (2) a violation of Kunze's civil rights as a result of being housed for extended periods of time in the administrative segregation unit at the North Dakota State Penitentiary. On January 30, 2003, Magistrate Judge Kautzmann issued a Report and Recommendation and recommended that Kunze be allowed to proceed on both claims. On February 3, 2004, the Court adopted Magistrate Judge Kautzmann's Report and Recommendation and directed the Clerk of Court to file Kunze's complaint.

### B. KUNZE'S CLAIMS

#### 1) ADMINISTRATIVE SEGREGATION

On November 6, 2002, David Kunze was placed in administrative segregation after allegedly threatening to kill another inmate. Kunze has a history of felony offenses resulting in incarceration in county jails and numerous state and federal prisons. He also has a history of at least six escapes from detention, including two escapes from the State Penitentiary. Kunze's current sentence was imposed for theft and robbery while on escape from a county jail.

North Dakota State Penitentiary officials conducted an investigation and concluded there was evidence showing Kunze had threatened to kill another inmate. Consequently, Kunze was transferred to disciplinary detention with the understanding that he would return to administrative segregation once he completed his disciplinary detention. The rationale for returning Kunze to administrative segregation was that he posed a continuing danger to the general penitentiary population.

Penitentiary officials conducted weekly reviews of Kunze's status following his return to administration segregation. After

two months they concluded that Kunze's "recent violent behaviors or tendencies" warranted an extended stay in administrative segregation.

While in administrative segregation, Kunze was afforded an opportunity to meet with the penitentiary's Administrative Segregation Committee once a month to discuss his status and to present his case for a return to the penitentiary's general population. Kunze was also given a chance to meet with Warden Tim Schuetzle once every three months. However, from November 2002 through January 2004, Kunze refused to meet with the either the Committee or the Warden. In his quarterly review dated July 25, 2003, Warden Schuetzle noted that Kunze had made threats against the Warden, correctional officers, and the law enforcement officers that arrested him. The Warden noted that Kunze "writes often about getting a gun and killing 'those sons of bitches.'" The Warden concluded that Kunze was not a good candidate for release from administrative segregation given that he was continually threatening the penitentiary's staff.[1] Kunze's threatening behavior continues today.

### 2) *MEDICAL TREATMENT*

In late 1999, Kunze expressed concern to the penitentiary's medical staff that he was developing throat cancer. Dr. G.D. Ebel, a contract physician with the penitentiary, performed a thyroid test on Kunze. The tests came back negative. Nevertheless, Kunze maintained that he was seriously ill. On January 21, 2000, Kunze was referred to Dr. Joseph M. Es-

posito, an ear, nose, and throat specialist with the Q & R Clinic in Bismarck, North Dakota. Dr. Esposito, after examining Kunze, concluded there were "[n]o objective areas or suspicious lesions that would explain patient's multiple symptoms of dissicated rhinitis, pharmgitis and laryngitis." Unconvinced, Kunze reported to Dr. Ebel on January 28, 2000, again complaining about his throat. Although he observed no signs of illness, Dr. Ebel ordered a throat culture, the results of which were normal.

Kunze's complaints persisted which prompted his referral to psychiatrist Dr. Cheryl Huber in January 2000. Dr. Huber met with Kunze, concluded that he suffered from a mood disorder, and prescribed Zoloft, an anti-depressant. This meeting did little to comfort Kunze. On February 11, 2000, Kunze again saw Dr. Ebel asserting that he was burning up, was suffering from neck pains, and "had cancer in his system." Dr. Ebel examined Kunze and concluded that he was cancer free. Dr. Ebel then referred Kunze back to Dr. Huber.

On March 9, 2000, Dr. Diehl, another contract physician with the penitentiary, performed a complete physical evaluation of Kunze before referring him to Dr. Bruce Schneider, a gastrointestinal specialist at the Q & R Clinic. Numerous tests, including a CT scan of Kunze's chest, a colonoscopy, and upper endoscopic examination of Kunze's esophagus and stomach, were ordered. Although there were no findings to warrant any major concern, the tests indicated that Kunze did

1. Warden Schuetzle wrote the following in his Administrative Segregation Review:

 David refused to meet with me for this review. I have some great concerns with David's temper. David has made threatening statements about killing staff persons i[n] some letters he wrote and recently mailed out of this institution. He is ex-

 tremely unhappy about what he perceives as lack of medical attention. I don't view him as being a good candidate to be released from [administrative segregation] at this time.

 State Defendants' Brief in Support of Motion for Summary Judgment, Ex. 1D.

have gastritis. Dr. Diehl also started Kunze on anti-psychotic medication.

Kunze continued to insist that he had throat cancer and he was subsequently referred to Dr. Ihor Krynycky, a physician at Medcenter One. Dr. Krynycky examined Kunze's throat and sinuses with a fiberoptic camera and concluded that he suffered from "chronic tonsillitis and chronic laryngitis most likely secondary to gastroesophageal reflux disease." Kunze was still convinced that he had cancer and was referred to additional specialists at the Q & R clinic for further testing.

On November 20, 2001, Dr. Marcus Fiechtner, an ear, nose and throat specialist at Q & R Clinic, examined Kunze's throat and removed some tissue for a biopsy. In addition, Dr. Adam Mehdiratta performed an esophagogastroduodenoscopy with biopsy on Kunze. Dr. Fiechtner's examination and biopsy results came back normal. Dr. Mehdiratta's examination disclosed no signs of cancer, but the exam revealed that Kunze had developed a duodenal ulcer. Dr. Fiechtner met with Kunze in December 2001 to explain that his problems were not attributable to cancer but instead were likely caused by an ulcer and gastric reflux disease. This information did little to dissuade Kunze from seeking additional treatment.

Kunze returned to Dr. Ebel on January 20, 2002, insisting that he had cancer of the throat and tongue. Dr. Ebel responded by prescribing amitriptyline. Throughout calendar year 2002, Kunze continued to express his belief that he suffered from throat cancer, despite overwhelming medical evidence to the contrary.

On January 6, 2003, Dr. Ebel scheduled an appointment for Kunze with Dr. Wink, another ear, nose, and throat specialist at the Q & R Clinic. Kunze refused the consult with Dr. Wink and insisted that he first needed to visit with an attorney.

In April 2003, Deb Houdek, a physician's assistant at the penitentiary, performed a complete physical examination of Kunze. In addition, P.A. Houdek ordered numerous tests, including an EKG and chest x-ray to ascertain the condition of Kunze's heart and another diagnostic test to identify any cancer/tumor markers. The test results indicated no presence of cancer.

Penitentiary medical personnel continued to evaluate Kunze periodically and over the next few months began treating him for high blood pressure and low-grade diabetes. On July 16, 2003, Dr. Ebel visited Kunze and noted that Kunze was agitated and insistent that he was dying of cancer. At Kunze's request, Dr. Ebel arranged a meeting with Dr. Wink. On July 23, 2003, Dr. Wink met with Kunze. Dr. Wink conducted a full examination of the oral cavity, and a fiberoptic examination of the nasal pharaynx, hypopharynx, and larynx. The results were normal. Dr. Wink made the following diagnosis:

> [W]e have an emotionally possibly mentally disturbed male who is fixating on possible cancer of the throat with no physical findings to suggest this. In view of large neck, perhaps it would benefit the patient and his physicians carrying (sic) for him to obtain a CT scan with contrast to rule out any occult lymphadenopathy in the neck and masses that cannot be seen.

Dr. Wink then ordered a CT scan which was scheduled at Medcenter One on August 8, 2003. However, it was cancelled after Kunze refused to comply with the requirement that he not eat or drink anything prior to the procedure.

On November 24, 2003, Dr. John Hagan, a contract physician with the penitentiary, examined Kunze. When Kunze expressed concern about throat and tongue cancer, Dr. Hagan took tongue scrapings to check for yeast or any unusual squamous cells.

Dr. Hagen sent the scrapings to a pathologist at St. Alexius for analysis. The pathologist examined the scrapings and determined they were normal with no trace of malignant cells.

On January 2, 2004, Kunze returned to Dr. Hagan still convinced that he had throat and tongue cancer. Despite Dr. Hagan's assurances that the tongue scrapings were negative for cancer, Kunze became agitated and insisted that Dr. Ebel had told him that he did have cancer and was going to die. Finding nothing to substantiate this claim in Kunze's file, Dr. Hagan reassured Kunze that he did not have cancer.

Thus, over an extended period of time of more than 3½ years, Kunze was evaluated by one physician's assistant and at least eight physicians, three of who were ear, nose, and throat specialists. These treating physicians performed numerous tests on Kunze which included a thyroid test, a throat culture, a biopsy, an EKG, and a CEA (a test to identify any cancer or tumor markers), as well as other various laboratory tests. Kunze was scheduled for a CT scan on August 8, 2003, but failed to comply with the pre-CT scan instructions about eating and drinking so the scan was cancelled. Kunze was diagnosed with high blood pressure, low-high grade diabetes, anxiety problems, gastritis, chronic tonsillitis and laryngitis, and an ulcer, and appropriate treatment was provided by his treating physicians. However, all of the physicians Kunze has consulted with since late 1999 have concluded that Kunze exhibits no signs or symptoms of cancer.

## C. *MOTIONS FOR SUMMARY JUDGMENT*

On July 12, 2004, Defendants Monty Rauser, Elaine Little, Timothy Schuetzle, Robert Coad, Pat Branson, Kathy Bachmeier, Karen Boelter, Gail Schafer, and Greg Pfennig (hereinafter referred to as the "State Defendants") filed a Motion for Summary Judgment. In their motion, it was asserted that the Eleventh Amendment bars the recovery of any monetary damages and that Kunze cannot demonstrate that his constitutional rights were violated.

On July 26, 2004, Defendant Dr. John Hagan also filed a Motion for Summary Judgment. Defendant Hagan asserted that the record belies any assertion by Kunze that he has been denied proper medical care.

On July 28, 2004, and August 13, 2004, Kunze filed responses to the defense motions. Kunze has denied ever having made threats to anyone, insists the Defendants have refused to accept that he has cancer, and contends that his "test results were lost and/or either disappeared in fact with the help of someone at this Prison Infirmary."[2] In addition, although the overwhelming medical evidence seems to suggest otherwise, Kunze states contends that cancer has spread from his throat to his lymphatic system.

## II. *STANDARD OF REVIEW*

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to

---

2. Kunze was presumably served with a copy of the State Defendants' Motion for Summary Judgment and supporting brief. Attached as exhibits to the brief are copies of Kunze's medical records. *See* Docket No. 34 (State Defendants' Brief in Support of Summary Judgment, Exhibits 2A–N). Thus, any assertion by Kunze that his medical records have been destroyed or that he has been deprived access to his medical records is without merit.

judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. LEGAL DISCUSSION

### A. STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### 1) CLAIM FOR MONETARY DAMAGES

■ As a preliminary matter, the Court notes that Kunze's complaint is silent as to the capacity in which he is suing the State Defendants. As such, the Court interprets the complaint as including only official-capacity claims. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir.1995); *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 n. 2 (8th Cir.1996).

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

The Supreme Court held in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), that "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (citations omitted). "[A] federal court's remedial power, consistent with the Eleventh Amendment, ... may not include a retroactive award which requires the payment of funds from the state treasury." 415 U.S. at 677, 94 S.Ct. 1347. The Supreme Court has consistently held that the Eleventh Amendment bars suits in federal court against a state, including a state agency, by its own citizens as well as citizens of another state.[3]

A suit against a state employee acting in his official capacity is tantamount to a lawsuit against the state. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71,

---

3. The State of North Dakota, in abrogating sovereign immunity and permitting suits against the State in state courts, did not waive Eleventh Amendment immunity. *See* N.D.C.C. § 32–12.2–10.

109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that a suit against a state official in his or her official capacity is synonymous with a suit against the state itself). As such, Kunze's claims for monetary damages against the State Defendants in their official capacities are barred the Eleventh Amendment.

### 2) CLAIM FOR INJUNCTIVE RELIEF

For injunctive relief to be available against a defendant, an inmate must show that he continues to be subjected to the conditions of which he complains. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again. . . ." *Id.* "A showing that unconstitutional practices have taken place in the past is not enough. [The inmate] must show that such practices are likely to affect him in the future." *Butler v. Dowd*, 979 F.2d 661, 674 (8th Cir.1992).[4]

### a. ADMINISTRATIVE SEGREGATION

In *Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir.1983), the Eighth Circuit recognized that the placement of an inmate in administrative segregation is not inherently unconstitutional when done for non-punitive reasons and the inmate was afforded an opportunity to request release from such confinement.

> It is safe to say that in all prisons, except perhaps some extremely minimum security institutions, it is found to be absolutely necessary for a number of

non-punitive reasons to segregate individual inmate from the general prison population, and to hold them in segregated status for varying or indefinite periods of time. [citations omitted.] As long as there is a procedure for reviewing periodically the situation of inmate who are in administrative segregation . . . due process is satisfied, and no pre-deprivation hearing is required by the federal constitution.

*Jones v. Mabry*, 723 F.2d 590, 594. However, the Court added that an inmate is entitled to a pre-deprivation hearing when he is placed in administrative segregation with the intent to punish him for past conduct. *Id.*

■ The record in this case clearly establishes that Kunze was initially placed in administrative segregation in response to threats he made to another inmate. Kunze was later returned to administrative segregation based upon the reasonable belief that he posed a security risk because he continued to threaten other inmates, penitentiary staff, and Warden Schuetzle. There is no dispute that Kunze was given several chances to meet with Warden Schuetzle and the Administrative Segregation Committee to discuss his status and to make a case for his return to the general inmate population. However, Kunze voluntarily chose not to take advantage of these opportunities.

The State Defendants assert, and the Court agrees, that without such meetings, along with the overwhelming evidence in the record which establishes that Kunze poses a direct threat to others, Kunze cannot be safely placed in a lesser restrictive environment at the North Dakota

---

4. It is well-established that when an inmate is no longer subject to the conditions of which he complains, his claim for injunctive relief is moot and should be dismissed. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir.1985).

As the parties have not clearly indicated in their submissions that Kunze has re-entered the general penitentiary population, the Court will proceed under the assumption that he is still in administrative segregation.

State Penitentiary. Kunze's claim that his civil rights have been violated as a result of being housed in the administrative segregation unit is devoid of merit. There is a procedure in place for a periodic review of Kunze's status in administrative segregation so due process is satisfied. The fact Kunze has chosen not to take advantage of the numerous opportunities afforded him to meet with the Administrative Segregation Committee and the Warden to discuss his status is an irresponsible decision he must live with.

### b. *DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS*

■ "The Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates." *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir.2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The government is obligated "to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "For this reason, the Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." *Id.; see Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir.1995) (requiring an inmate to demonstrate a deliberate indifference to his serious medical needs when alleging a deprivation of medical care). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995). Deliberate indifference to such a need may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Robinson v. Hager*, 292 F.3d 560, 563–64 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

■ It is well-established that a prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 342, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of, but disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

■ To prevail on an Eighth Amendment claim of deliberate indifference, an inmate must prove that (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. *See Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir.2002); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.1997); *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir.1993). This entails a showing of something more than mere negligence or medical malpractice. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999) (finding that neither negligence nor medical malpractice are sufficient to rise to an Eighth Amendment violation). Viewed

under these standards, Kunze's claim fails as a matter of law. Kunze has failed to establish the existence of an objectively serious medical need *or* that there existed a substantial risk of serious harm to him under the circumstances. He has also failed to present any evidence which reflects a subjective state of mind evincing deliberate indifference on the part of the defendants. Therefore, Kunze's claim of an Eighth Amendment violation fails as a matter of law.

 The Eighth Circuit has consistently recognized that a serious medical need must be supported by medical evidence, such as a physician's diagnosis, or a condition that is obvious to a lay person. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir.1999). The Court has also recognized that "[a] plaintiff's self-diagnosis alone cannot establish that he suffers from a serious medical need when the medical evidence does not support his self-diagnosis." *Id.*

The record clearly establishes that Kunze has been subjected to a battery of physical examinations, diagnostic tests, and numerous studies designed to determine the etiology of his subjective complaints or concerns of having throat cancer. Since late 1999, Kunze has been evaluated by one physician's assistant, and at least eight physicians, three of who are ear, nose, and throat specialists. These treating physicians have ordered a multitude of tests, including a thyroid test, a throat culture, biopsy, an EKG, and a CAE (a test designed to find an cancer or tumor markers). Kunze was scheduled for a CT scan but failed to comply with pre-CT scan instructions so the scan was cancelled. Kunze was diagnosed with high blood pressure, low grade diabetes, anxiety problems, gastritis, chronic tonsillitis and laryngitis, and an ulcer, and appropriate care and treatment was provided. The clear and undisputed evidence in the record establishes that all of the treating physicians who have examined and evaluated Kunze to date have concluded that he has exhibited no signs or symptoms of cancer. To say that the medical evidence does not support the self-diagnosis of cancer would be an understatement.

Kunze is required to provide *some* relevant medical evidence, whether it be through expert testimony or otherwise, to establish the existence of a serious medical need. Aside from the self-diagnosis of cancer, Kunze has failed to present any medical evidence or expert testimony that demonstrates he has a serious medical need. The undisputed evidence demonstrates that Kunze has failed to meet his burden of establishing a prima facie violation of the Eighth Amendment.

 Even assuming for the sake of argument that Kunze could arguably demonstrate the existence of a serious medical need that requires treatment which has been ignored to date, he has failed to present any competent evidence to indicate the Defendants were deliberately indifferent to his health or safety. The record reveals that the Defendants have not ignored Kunze's ongoing concerns and subjective beliefs that he has cancer nor have Kunze's treating physicians denied him any medical treatment. Instead, the record demonstrates that the Defendants have undertaken more than reasonable efforts to evaluate Kunze's medical condition and to attempt to identify the cause(s) of his underlying complaints. Numerous in-prison specialists and outside consultants have been retained. When penitentiary staff found Kunze to be ill, the medical records reveal that he was afforded prompt and appropriate medical care. Notably, Kunze has never complained about the medical care and treatment he has received from the North Dakota State Penitentiary for his diabetes, hypertension, ulcer, gastritis, and gastric reflux disease.

With respect to addressing Kunze's concerns relating to a fear of cancer, Kunze may question whether the State Defendants pursued the appropriate course of treatment or ordered a sufficient number of diagnostic tests. However, the mere fact that he may disagree with the course of treatment or question the test results is not sufficient to allege a serious medical need to which the Defendants were deliberately indifferent. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir.1994). Kunzes' wholesale rejection of the medical opinions and diagnoses regarding his fear of cancer does not establish either a deprivation of adequate medical care or deliberate indifference to his medical condition.

### B. *DEFENDANT HAGAN'S MOTION FOR SUMMARY JUDGMENT*

Kunze's sole claim against Dr. John Hagan is that he (Dr. Hagen) has shown deliberate indifference to Kunze's medical needs. However, this claim fails because Kunze's self-diagnosis of cancer does not establish that he has a serious medical need that has been ignored and left untreated to date. The record reveals that Dr. Hagan examined Kunze's medical records which failed to disclose any statement ever allegedly made by Dr. Ebel to Kunze that he (Kunze) had terminal cancer or words to that effect. Regardless of any alleged statement made by Dr. Ebel which Kunze may have construed as a diagnosis of cancer, the fact remains that Dr. Ebel documented the lack of any cancerous cells in the medical records. The medical evidence is overwhelming and contradicts any assertion that Kunze suffers from terminal cancer.

Further, even if Kunze could prove that he had a serious medical need, he has not provided the Court with any credible evidence to support the assertion that Dr. Hagan was deliberately indifferent to his medical needs. Despite the fact that numerous physicians have conducted a litany of diagnostic tests and studies, and every treating physician has concluded that Kunze is cancer free, Dr. Hagan responded to Kunze's cancer concerns by performing a tongue scraping for the purpose of determining whether malignant cells were present. There is no evidence in the record before the Court to show that Dr. Hagan ignored Kunze's persistent complaints or concerns. There is no evidence in the record before the Court to show that Dr. Hagan was deliberately indifferent to Kunze's medical needs, or that Dr. Hagan was negligent or in any manner mishandled Kunze's case. The United States Supreme Court has defined deliberate indifference as "something more than negligence" but there is simply no evidence in the record before the Court to support a claim of negligence much less any evidence reflecting a deliberate indifference to Kunze's medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To the contrary, the record before the Court clearly establish that Dr. Hagan was attentive and thorough in the care and treatment rendered. The claim of an Eighth Amendment violation fails as a matter of law.

### III. *CONCLUSION*

The State Defendants' Motion for Summary Judgment (Docket No. 34) is **GRANTED**. Dr. Hagen's Motion for Summary Judgment (Docket No. 37) is **GRANTED**. Kunze's claims against the State Defendants and Dr. Hagan are dismissed. The claims against Defendants Diehl, Ebel, Fiechtner remain.

**IT IS SO ORDERED.**