*764 GRUENDER, Circuit Judge.
Barbara Alberson, on behalf of her deceased son James Alberson and as special administrator of his estate, appeals an adverse grant of summary judgment on her 42 U.S.C. § 1983 claim. Ms. Alberson alleges that the appellees acted with deliberate indifference with respect to the medical treatment of Mr. Alberson, who died from complications arising from Goodpasture Syndrome while in the custody of the Arkansas Department of Correction (“ADC”). For the reasons discussed below, we affirm the judgment of the district court.[1]
Mr. Alberson began a twelve-month sentence at the ADC on May 16, 2003 for a driving-while-intoxicated conviction. At all times relevant to this action, Larry Norris was the Director of the ADC; Kay Howell was warden of the Wrightsville Unit of the ADC; John Byus was the Medical Administrator of the ADC; Correctional Medical Services (“CMS”) was under contract to provide medical services to the ADC; Dr. James Branch was a physician employed by CMS; and Betty Leatherwood was a registered nurse employed by CMS (collectively, “Appellees”).
Mr. Alberson began suffering from earaches before arriving at the Wrightsville Unit on August 11, 2003 and filed numerous medical service requests after his arrival. Between August and October 2003, Mr. Aberson complained of his earaches and other afflictions in letters to Ms. Aberson. Ms. Aberson in turn called Howell approximately thirty times to demand that her son receive medical treatment. Ms. Aberson alleges that Howell told her repeatedly that “there’s nothing wrong with your son” and that her son was “a faker and an actor.” Ms. Aberson also called Byus in late September 2003 and received a similar response. Nonetheless, Mr. Aberson received treatment by a physician at the Wrightsville Unit Infirmary on six separate dates between August 21 and October 29, including a two-night stay in the infirmary ward. He received multiple rounds of antibiotics and other treatments for ear infections, acid reflux, edema of the legs, bilateral knee pain, erythema and purpuric rash, and hypersensitivity vasculitis.
On November 7, 2003, Mr. Aberson returned to the infirmary with complaints of joint pain, shortness of breath and a sore throat. Dr. Branch made a preliminary diagnosis of streptococcus infection, prescribed new antibiotics and ordered additional diagnostic tests. On November 11, Dr. Branch called Mr. Aberson to the infirmary for a follow-up examination, noted a chronic cough and persistent sore throat and ordered a chest x-ray and a series of laboratory tests. On November 12, when Mr. Aberson’s condition failed to improve, he was prescribed a different antibiotic. On November 14, Mr. Aberson produced blood in his cough and was admitted to the infirmary ward. The chest x-ray ordered three days earlier had not yet been performed. When Mr. Aberson’s condition had not improved the following morning, Dr. Branch suspected pneumonia and transferred Mr. Aberson to Southwest Hospital in Little Rock, Akansas. Mr. Aberson lapsed into a vegetative state on November 18 and died the next day.
An autopsy determined Mr. Aberson’s cause of death to be pulmonary hemorrhage and renal failure resulting from Goodpasture Syndrome. Goodpasture Syndrome is a rare autoimmune disease that is difficult to diagnose because its *765 symptoms present a “confusing clinical picture.” 7 Ausman & Snyder’s Medical Library (Lawyers’ Edition) § 14:32 (1999). “Patients who survive the initial pulmonary hemorrhage usually progress to end-stage renal failure.” Id. § 16:16. No definitive therapy exists. Id.
Ms. Alberson sued the Appellees under 42 U.S.C. § 1983, alleging that the Appellees were deliberately indifferent to Mr. Alberson’s serious medical needs. The district court granted the Appellees’ motions for summary judgment because (1) the undisputed evidence of medical treatment provided to Mr. Alberson foreclosed a finding that the Appellees intentionally ignored Mr. Alberson’s suffering, and (2) Ms. Alberson did not submit expert evidence to prove a causal connection between the medical treatment provided by the Appellees and Mr. Alberson’s death.
We review the district court’s grant of summary judgment de novo and examine the facts in the light most favorable to the party opposing summary judgment. Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir.2004). A prison official’s deliberate indifference to a prisoner’s serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The claimant must show that “prison officials actually knew of but deliberately disregarded” the prisoner’s objectively serious medical needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997). Given the extensive record of medical treatment provided to Mr. Alberson in this case, we agree with the district court that Ms. Alberson’s evidence does not support a claim that any prison official deliberately disregarded Mr. Alberson’s suffering. Therefore, we analyze Ms. Alberson’s claim as one that the medical treatment provided to Mr. Alberson was so inadequate as to rise to the level of deliberate indifference.[2]
To state a claim of inadequate medical treatment for § 1983 purposes, “a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.” Estelle, 429 U.S. at 106, 97 S.Ct. 285. The plaintiff “must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.” Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995). Where the complaint involves treatment of a prisoner’s sophisticated medical condi *766 tion, expert testimony is required to show proof of causation. Gibson v. Weber, 433 F.3d 642, 646 (8th Cir.2006).
We agree with the district court that Ms. Alberson’s claim fails for lack of proof of causation. For instance, in Robinson v. Hager, 292 F.3d 560 (8th Cir.2002), a prisoner suffered a stroke after prison officials failed to provide him with blood pressure medication. We held that “although a person suffering from a stroke may exhibit visible symptoms, the stroke itself is a sophisticated injury which could be caused by numerous factors other than lack of medication. Therefore, expert medical testimony is needed to prove causation.” Id. at 564.
The instant case is similar. Goodpasture Syndrome certainly qualifies as a sophisticated medical condition. Although Mr. Alberson suffered from visible symptoms, a determination of whether CMS personnel should have provided different treatment for Mr. Alberson or diagnosed his fatal illness earlier, or indeed whether any treatment at all could have alleviated his suffering or arrested the progress of the disease, “is not within the realm of lay understanding.” Id. (quoting Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1210 (8th Cir.2000)). Therefore, Ms. Alberson’s failure to produce expert testimony to prove that a lack of proper medical treatment caused Mr. Alberson’s death is “fatal to [her] deliberate indifference claim as a matter of law.” Id. Ms. Alberson’s evidence that administrators Howell and Byus expressed skepticism about her son’s illnesses, while troubling, does not obviate the need for expert proof of causation.
We conclude that the district court did not err in granting the Appellees’ motions for summary judgment based on the absence of expert proof of causation. Accordingly, we affirm.

. The Honorable William R. Wilson, Jr., United States District Court for the Eastern District of Arkansas.

. The dissent contends that certain "gaps” in Mr. Alberson's treatment, in combination with the inappropriate remarks made by prison officials to Ms. Alberson, constitute sufficient evidence to create a jury question as to whether prison officials deliberately disregarded Mr. Alberson’s suffering. However, to the extent the dissent may be read to imply that Mr. Alberson developed an ear infection on July 31, 2003 but received no treatment for it until August 29, 2003, we note that Mr. Alberson was examined at the ADC Diagnostic Unit on August 1, 2003, and was prescribed a course of oral medication and ear drops for the ear infection. Notes from that visit also reflect that Mr. Alberson was already taking Zantac twice a day at that time for his heartburn. Mr. Alberson was reexamined on August 17, 2003, and the diagnosis stated, “[H]as allergy problems!;] can't hear out of ear — ears red[,] no swelling!,] some drainage!;] will give ctm and Tylenol.” Mr. Alberson was also prescribed further medication for his heartburn at that time. Similarly, to the extent the dissent may be read to imply that Mr. Alberson submitted a medical request on October 15, 2003 but received no treatment until his admittance to the infirmary on October 27, we note that Mr. Alberson was examined on October 17, was prescribed ice and a sling and given a "no work” restriction. In short, the record makes clear that Ms. Alberson’s evidence at best challenges the wisdom of the course of treatment provided to Mr. Alberson, and does not suggest a deliberate disregard of his suffering.