NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0333n.06

Case No. 18-3982

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED

Jul 02, 2019

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ROBERT JACKSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| OFFICER DANNY GIBSON, et al., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**O P I N I O N**

BEFORE: McKEAGUE, THAPAR, and MURPHY, Circuit Judges.

**McKEAGUE, Circuit Judge.** Robert Jackson alleges that, while he was incarcerated, Nurse Dana Wilmot was deliberately indifferent to his serious medical condition. In considering Wilmot's motion for summary judgment, however, the district court did not reach the question of whether Wilmot was deliberately indifferent. Instead, the district court determined that Jackson's cellulitis was a sophisticated medical condition and, borrowing from Eighth Circuit precedent, that Jackson's failure to designate an expert witness meant that he would be unable to prove that Wilmot's alleged deliberate indifference caused his cellulitis. Based on its holding that Jackson needed and had failed to designate an expert witness, the district court granted summary judgment in Wilmot's favor. We need not decide whether the district court erred in applying the Eighth Circuit's precedent. We affirm the district court's decision to grant summary judgment based on

our finding that Jackson has failed to create an issue of material fact as to whether Wilmot was deliberately indifferent.

**I**

On October 12, 2015, Jackson began his incarceration in the Middletown City Jail. That night, Jackson began experiencing pain on the bottom of his right foot, which he thought was due to an insect bite. In the morning, Jackson's foot had a red puncture wound, smaller than a dime. Jackson's symptoms worsened over the course of the day. He states that his wound began to blister and fill with pus. He submitted a "kite"—a paper slip prisoners submit to request medical treatment. The kite stated that his foot was causing him the worst pain he had ever felt and that it was double the size of his other foot. By the evening of October 14, he was having difficulty walking. Jackson did not receive a visit from the medical staff that night or on October 15. On the morning of October 16, Jackson was unable to move from his bed due to the pain in his foot.

According to Jackson, he saw Wilmot making her medical rounds late on October 16 or early on October 17. He states that he yelled for her and that she came over and stood about 10 to 15 feet away. He showed her the bottom of his foot, and she said, "we'll get you an ambulance whenever you get released[.]" He states that was the only time he saw Wilmot during his stay at the Middletown City Jail. Wilmot's notes from her examination of Jackson indicate that she observed a black mark on the bottom of his foot. She observed that the wound was not open, that there was no malodor present, and that there was no edema—*i.e.*, swelling. She diagnosed Jackson with a possible blood blister. Wilmot also noted that she made a medical appointment for Jackson with Dr. George Kaiser—the physician contracted with the City to provide medical services to inmates—by calling Dr. Kaiser and informing him that she would like for Dr. Kaiser to see

Jackson. Jackson claims that he filled out two more kites after Wilmot visited him, explaining that his condition was worsening.

By October 19, Jackson's foot had grown substantially worse. The spot on his foot was the size of two quarters and swelling with blood and pus. On October 20, Jackson was released from Middletown City Jail to be transported to another prison facility. Instead, he went to the hospital where his wound was incised and drained. He was diagnosed with cellulitis. A couple days after the incision, Jackson underwent two surgeries, one to extend the incision and one to close the wound. He complains that he has subsequently experienced pain in his foot.

Jackson sued Wilmot,[1] alleging that she had been deliberately indifferent to his serious medical condition, violating his Eighth and Fourteenth Amendment rights. On December 20, 2016, the district court entered a calendar order requiring, among other things, that Jackson make his expert disclosures and reports by February 3, 2017. Jackson did not name or identify any experts before February 3.

After the February 3 deadline, Wilmot moved for summary judgment. The court determined that Jackson would have to present evidence about whether Wilmot's alleged deliberate indifference in her "delay in treating (or failure to treat) Mr. Jackson caused or worsened his cellulitis and his alleged resulting foot injuries." The district court granted summary judgment, finding that Jackson's failure to designate an expert witness meant he would be unable to prove his claim at trial as a matter of law.

---

[1] Jackson's complaint also named corrections officer Danny Gibson. Jackson stipulated to dismissing his claim against Gibson, however, leaving only Jackson's claim against Wilmot.

**II**

We review the district court's grant of summary judgment *de novo*. *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching our determination, we take the facts in the light most favorable to the non-movant, drawing all reasonable inferences in that party's favor. *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016).

Jackson seeks damages under 42 U.S.C. § 1983 for Wilmot's alleged unconstitutional conduct—deliberate indifference to his serious medical condition. "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A deliberate indifference claim has subjective and objective components. "The objective component requires the existence of a 'sufficiently serious' medical need." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). To have a sufficiently culpable state of mind, the official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The district court did not grant summary judgment based on an analysis of the objective or subjective components of the deliberate indifference inquiry. Instead, the court concluded that, those elements aside, Jackson would not be able to prove that Wilmot caused his injuries. The court reasoned that Jackson's cellulitis was a sophisticated medical condition and was thus "outside the lay understanding of jurors." Because Jackson had not designated any expert testimony, the court found that Jackson would be unable to prove that Wilmot's alleged deliberate indifference caused or worsened Jackson's injuries, meaning Jackson's claim failed as a matter of law.[2]

The district court derived this principle from Eighth Circuit deliberate indifference cases that have required, under narrow circumstances, expert testimony when a plaintiff alleges that they suffered from a "sophisticated medical condition." *See Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) ("When an injury is sophisticated, proof of causation generally must be established by expert testimony."). The Eighth Circuit has explained that this requirement for expert testimony exists in addition to the objective and subjective elements necessary for a deliberate indifference claim. *Robinson*, 292 F.3d at 564. The expert testimony is used to prove that the official's deliberate indifference caused the serious medical condition, rather than the medical condition arising from an unrelated or underlying medical issue. *Id.* (requiring expert medical testimony to address whether a lapse in hypertension medication caused the plaintiff's stroke).

---

[2] The district court construed Jackson's complaint to allege damages only from his continued problems with his foot following the surgery to address his cellulitis. However, the complaint suggests that Jackson also plausibly seeks redress for the pain he experienced while at the Middletown City Jail. *See Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("[P]ain can be a sufficiently serious medical need."). To the extent that Jackson seeks damages for Wilmot's failure to treat his pain, there does not appear to be a question of causation.

This circuit has not adopted the Eighth Circuit's requirement for expert testimony for sophisticated medical conditions. We have, however, established our own requirements regarding what medical proof prisoners must provide to defeat a motion for summary judgment for certain deliberate indifference claims. Although there is some overlap between when we require medical proof and when the Eighth Circuit requires expert medical testimony, a number of crucial differences exist. One significant difference between our medical proof requirements and the Eighth Circuit's expert testimony requirement for sophisticated medical conditions is that our requirements operate within the framework of the objective component of the deliberate indifference inquiry, rather than as a requirement in addition to satisfying the objective and subjective components. We have required that—absent certain exceptions—when a prisoner alleges that a delay in treatment or inadequate medical treatment resulted in a serious medical condition, that prisoner must provide medical proof that the delay or inadequate treatment resulted in the serious medical condition to satisfy the objective component of the deliberate indifference inquiry. *See Napier v. Madison Cty.*, 238 F.3d 739, 742–43 (6th Cir. 2001); *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Further, unlike the Eighth Circuit, we have not always required the plaintiff's "medical proof" to be expert medical testimony. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018); *Cobbs v. Pramstaller*, 475 F. App'x 575, 580 (6th Cir. 2012) (evidence in medical record was sufficient medical proof to satisfy objective component of deliberate indifference inquiry). Additionally, we do not limit situations where we require medical proof only to cases involving sophisticated injuries. Finally, the Eighth Circuit seems to apply its expert medical testimony requirement only when there is a question of whether some other *medical* cause could have led to the serious condition and not in every case where there might be alternative causes. *See, e.g., Robinson*, 292 F.3d at 564; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

We need not decide whether the district court erred in applying Eighth Circuit precedent because we find that Wilmot was not deliberately indifferent. The district court declined to decide whether Wilmot was deliberately indifferent, but the question of Wilmot's deliberate indifference was fully briefed by the parties in the course of Wilmot's motion for summary judgment. Seeing no reason to further burden the district court's already busy docket, we consider the party's arguments on Wilmot's alleged deliberate indifference, beginning with the subjective element of Jackson's deliberate indifference claim.

Wilmot examined Jackson just one time, gathering information about his condition. Jackson does not dispute that Wilmot examined him, at least to a certain extent, late on October 16 or early on October 17. Nor does Jackson dispute that Wilmot took notes of her examination indicating that she observed a small black mark on the bottom of his foot that looked like a blood blister, that there was no swelling, and that she detected no malodor. In deposition testimony, Jackson agreed that at the time Wilmot saw his foot it appeared that he had a blood blister. Wilmot does not dispute that she told Jackson that there was nothing they could do about his foot except call an ambulance for him when he was released from jail. Although Jackson claims that Wilmot did not make an appointment for him to see Dr. Kaiser, Jackson offers no evidence to counter Wilmot's testimony that she called Dr. Kaiser and asked him to see Jackson.[3] Similarly, Jackson

---

[3] Jackson's complaint alleges that he received "no care, not substandard care." Jackson, however, did receive care. He was seen by Wilmot, a nurse. And Wilmot made a decision about what medical action was needed: an appointment with Dr. Kaiser. Making a referral for complained of pain and a blood blister is not "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). The only evidence Jackson offers to support his claim that Wilmot did not schedule him an appointment with Dr. Kaiser is a note that Dr. Kaiser did not take Jackson as one of his patients. Although Jackson may not have been one of Dr. Kaiser's patients, that fact does not indicate that Wilmot did not make Jackson an appointment. There is, therefore, no factual basis for Jackson's assertion that he received no care.

offers no evidence to support his claim that Wilmot saw any kites Jackson submitted after the morning of October 17.

Jackson's complaint plausibly alleges that Jackson suffered two injuries: the pain he experienced between when Wilmot examined his foot and when he was diagnosed with cellulitis, and the ongoing long-term effects from his cellulitis-related surgeries.

There is not a question of material fact about whether Wilmot knew of and consciously disregarded the risk that Jackson would develop cellulitis and experience his surgery-related injuries. Jackson agrees that when Wilmot examined him, it appeared that he had a blood blister. Additionally, as Jackson himself alleges, his condition worsened between the time Wilmot saw him and his diagnosis at the hospital. Jackson has not put forth any evidence that, having observed a blood blister, Wilmot consciously disregarded a substantial risk that Jackson would develop cellulitis. Jackson's claim of deliberate indifference as to his surgery-related injury fails, therefore, because Wilmot was not aware of facts that would allow her to draw the inference that Jackson had a serious risk of cellulitis-related harm.

There is a question of material fact about whether Wilmot knew that Jackson was in pain. Jackson contends that Wilmot should have known about his pain from his foot's appearance, his "inability to place any pressure on his foot, and his statement of intolerable pain." Jackson's testimony about Wilmot's examination does not suggest that she observed an injury that, by its physical appearance, would indicate that Jackson was in severe pain. Nor does Jackson allege that Wilmot saw him attempt to place pressure on his foot. Wilmot did, however, hear and read about Jackson's pain. Simply being informed by Jackson about his pain might not be enough to infer that Wilmot actually knew he was in pain—she could have thought, for example, that Jackson was misrepresenting his pain in order to get access to pain medications. Jackson's claim, however, that

Wilmot told him he would get an ambulance when he was released could support the inference that Wilmot thought that Jackson was not misrepresenting his pain. It is possible that a jury could conclude that Wilmot was therefore aware of a substantial risk of Jackson experiencing pain-related harm.

To the extent that Wilmot knew of facts and drew the inference that Jackson had a substantial risk of serious pain-related harm, Wilmot did not disregard that risk. Wilmot determined that the appropriate course of treatment was to schedule an appointment for Jackson with Dr. Kaiser.[4] Even if we conclude, taking the facts in the light most favorable to Jackson, that Wilmot misdiagnosed Jackson by underestimating the pain he was in and that Wilmot should have done more to treat Jackson than schedule an appointment with Dr. Kaiser, the evidence only supports finding that Wilmot was negligent. And mere negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

In sum, Jackson has failed to create a question of material fact as to whether he can satisfy the subjective component of his deliberate indifference claim. Jackson cannot succeed on his deliberate indifference claim for his surgery-related cellulitis injury because Wilmot was not aware of facts sufficient to draw the inference that there was a risk of Jackson developing cellulitis. And Jackson cannot succeed on his deliberate indifference claim for his pain-related injury because Wilmot made him an appointment with Dr. Kaiser, meaning she did not disregard the risk of pain-related harm.

---

[4] Although we find that Wilmot was not aware of facts to draw the inference that Jackson had a serious risk of developing cellulitis, assuming that Wilmot *did* draw that inference, the referral to Dr. Kaiser would mean that Wilmot did not disregard that risk of harm either.

Because we conclude that Jackson has failed to raise a question of material fact on the subjective component of his deliberate indifference claim, we need not address the objective component. *See Jordan v. Koehler*, No. 92-2493, 1993 WL 535177, at *3 (6th Cir. Dec. 27, 1993) (per curiam).

**III**

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.